**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Alton Williams, *et. al*, | |
|    *Plaintiffs*, | |
| | No. 20 CV 1121 |
| v. | |
| | Judge Lindsay C. Jenkins |
| State Farm Mutual Automobile Insurance Co., *et. al*, | |
|    *Defendant*. | |

### ORDER

Plaintiffs Alton Williams, Brandon Herndon, Markus Tolson, Jeffrey Flowers, Vvonaka Richardson, Vera Dixon and Brooke Cluse (collectively, "Plaintiffs"), all former or current State Farm Agents, have filed a Second Amended Complaint ("SAC") against State Farm Mutual Automobile Insurance Co., State Farm Life Insurance Co., State Farm Fire and Casualty Co., State Farm General Insurance Co., and State Farm Bank, F.S.B. (collectively, "State Farm"), on behalf of themselves and a similarly situated class. [Dkt. No. 107.] Like the First Amended Complaint, the SAC alleges racial discrimination in violation of 42 U.S.C. § 1981 (Count I); and retaliation in violation of 42 U.S.C. § 1981 (Count II). It also brings three new claims by Plaintiff Richardson for racial discrimination in violation of the Civil Rights Act of 1964 ("Title VII") on behalf of Richardson and those similarly situated (Count III); sex discrimination and harassment in violation of Title VII (Count IV); and retaliation in violation of Title VII (Count V). [*Id.*]

State Farm seeks to dismiss portions of the SAC pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). [Dkt. No. 112.] It also seeks to strike Plaintiffs' class allegations. [Dkt. No. 116.] For the reasons stated below, the motion to dismiss is granted in part and denied in part and the motion to strike is denied.

### *Background*

The salient factual allegations in the SAC, which largely mirror those in the FAC, were already summarized in the Court's Order denying State Farm's first motion to dismiss. [Dkt. No. 57.] In short, Plaintiffs allege that through a uniform set of firm-wide policies and practices, State Farm systematically discriminates against its African American Agents, resulting in lower pay, differential treatment, and higher rates of attrition for African American Agents. [*Id.*] Plaintiffs are African Americans who have worked as State Farm Agents and State Farm Term Independent Contract Agents ("TICA Agents"). Plaintiff Richardson worked as a State Farm TICA Agent in Alabama "from June 2019 until she was unlawfully terminated in approximately July 2020." SAC ¶ 13. The SAC brings several Title VII claims, alleging race discrimination, both individually and on behalf of a similarly

situated class, as well as individual Title VII claims for sex discrimination and retaliation. [Dkt. 107 at ¶¶ 133—146.]

State Farm's pending motion to dismiss concerns only the Title VII claims. It argues that dismissal is appropriate because (1) Richardson lacks standing to pursue Title VII claims regarding certain of the practices challenged in the SAC; (2) she has not adequately pled a Title VII disparate impact claim; and (3) the SAC was filed beyond the applicable statute of limitations. [Dkt. No. 112.]

*Legal Standards*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is construed as a "facial attack[ ] on the complaint, contesting whether the allegations, taken as true, support standing." *Choice v. Kohn Law Firm, S.C.*, — 4th —, 2023 WL 5158157, at *2 (Aug. 11, 2023) (citing *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021)). Well-pleaded facts are accepted as true, and the Court draws all reasonable inferences in Richardson's favor. *Id.* "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, –– U.S. ––––, 140 S. Ct. 1615, 1618 (2020).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings. "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor." *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

*Standing*

State Farm maintains that Richardson's Title VII claims must be dismissed on standing grounds because she does not allege that she "personally was injured or harmed by" several of the alleged policies and practices described in the SAC. [Dkt. 113 at 7–9.] According to State Farm, Richardson has only sufficiently alleged two adverse actions to which she was personally subjected: (1) that she was not assigned the number of customers she was initially promised at the outset of her TICA period and State Farm allegedly assigned those policies to a white agent; and (2) State Farm refused to extend her 13-month TICA term or grant her a full Agent's Agreement, but granted such extensions to similarly situated non-African American Agents. [*Id.*; Dkt. No. 107, at ¶¶ 99, 103.] According to State Farm, Richardson has not adequately alleged that she was personally subjected to any discriminatory policy or practice with respect to the location of her territory; her compensation or any application of the "scorecard bonus" program; or that she was subject to any racially discriminatory

2

discipline or termination under the Termination Review Process. [Dkt. No. 113 at 8–9.]

To begin, the Court agrees with Richardson that State Farm's arguments really are an attempt to narrow her Title VII claims to just two alleged policies: first, to deny Richardson the promised number of customers at the start of her TICA period; and second, the refusal to offer her a full Agent's Agreement or extension at the conclusion of her TICA contract. [Dkt. No. 122 at 7.]

Narrowing aside, Richardson argues that the SAC does sufficiently allege that she was personally injury or harmed by several other discriminatory policies and practices described in the SAC, in particular: (1) the TICA training program's intentional use of discriminatory criteria; (2) the territory and agency assignment system, which, she says, dictated her agency location; (3) the insurance policy assignment system, which promised Richardson substantial books of business that were ultimately assigned to a white TICA Agents; (4) the criteria used in the compensation system, which are alleged to harm Black agents and which resulted in lost wages for Richardson; and (5) disciplinary and compliance practices, which State Farm allegedly used to "terminate[] Richardson's contract" for failure to meet production goals. [*Id.* at 7–8.]

Based on the Court's review of the SAC, Richardson has sufficiently alleged discrimination based on her race with respect to the location of her territory and her compensation. Accepting her well-pleaded allegations as true, as the Court must, Richardson alleges that she personally requested but was denied a contract extension, even though "State Farm gave white TICA Agents who did not meet production goals extensions and full Agent contracts." [Dkt. No. 107 at ¶ 104.] She alleges that her location assignment in Mobile, Alabama came with the promise of a substantial portion of two books of business, but that State Farm's "discriminatory policy assignment practices" denied her "the amount of policies it promised and instead assigned the majority of the policies and books of business to a white TICA Agent." [*Id.* ¶ 99.] She alleges that State Farm "provides substantial compensation to its Agents" pursuant to the "Scorecard Bonus," but that it "selects and relies on factors that disadvantage African Americans" when calculating eligibility. [*Id.* ¶ 41.] She alleges that Black Agents are substantially less likely to meet the requirements of the Scorecard Bonus policy. [*Id.* ¶ 44.] These discriminatory policies and practices, she claims, harmed her personally, including in the form of lost wages and other benefits. [*Id.* ¶ 106.] While some of these factual allegations are thinner than others, they nonetheless satisfy Rule Eight's minimum pleading requirements with respect to the location of her territory and compensation.

The SAC does not, however, sufficiently allege that Richardson was personally subjected to any racially discriminatory discipline. The SAC alleges State Farm "subjects African American Agents to heightened scrutiny, holds them to higher compliance standards, and imposes greater discipline, including termination, on African American Agents for alleged violations of Firm policies," than it does on other

3

agents. [*Id.* ¶ 46.] But Richardson does not connect this assertion to any specific factual allegation that disciplinary action was imposed on her personally on account of her race.

The closest she comes to making the requisite connection to discipline are her claims concerning her termination. The SAC describes the nature of a practice known as the "Termination Review Plan," where agents who are informed that State Farm intends to terminate them may request a termination review. [*Id.* ¶¶ 48–50.] But this policy did not apply to TICA Agents like Richardson, who were subject to 13-month TICA contracts. [*Id.* ¶ 27.] True, Richardson alleges that she worked as a TICA Agent "from June 2019 until she was *unlawfully terminated* in approximately July 2020." [Dkt. No. 107 at ¶ 13 (emphasis added).] But this is a legal conclusion, and only factual allegations are entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that while "a court must accept as true all of the allegations contained in a complaint," it need not do so for "legal conclusions").

Without the legal conclusion, all that remains is Richardson's factual allegation that her contract expired. Richardson expressly states that she was a party to a TICA contract beginning in June 2019, which expired by its own terms in July 2020. [Dkt. No. 107 at ¶¶ 97 ("Plaintiff Vvonaka Richardson became a State Farm TICA Agent in June 2019"), 104 ("Richardson asked State Farm management and its CEO for an extension of her TICA contract in light of the pandemic. State Farm denied her request and denied her a full Agent contract in the summer of 2020.").] There are no allegations in the SAC that could be fairly construed as imposing the Termination Review Plan on Richardson, nor does her response brief meaningfully dispute that her TICA contract naturally expired. [Dkt. Nos. 107, 122.] Indeed, the SAC affirmatively asserts that it *did* expire. The SAC alleges that Richardson's request for a contract extension and to receive a full Agent contract was denied, without any accompanying allegations of racial bias. As such, Richardson has failed to adequately plead facts establishing that State Farm discriminated against her personally with respect to her termination.

For these same reasons, State Farm argues that Richardson "lacks standing to seek prospective injunctive or declaratory relief on behalf of herself or a putative class." [Dkt. No. 113 at 9–10.] It contends that Richardson cannot demonstrate that she will be subject to any alleged discriminatory conduct in the future because her employment relationship with State Farm ended on its own terms in July 2020. [*Id.*]

"Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief . . . ." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Rather, a plaintiff seeking prospective relief must "face[] a real and immediate threat of future injury." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (internal quotation marks omitted); *see TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2210 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and

4

substantial."). It is true that former employees lack standing to pursue prospective declaratory and injunctive relief related to the employer's practices if they are no longer in "danger of future harm" from such practices. *Brown v. Cnty. of Cook*, 549 F. Supp. 2d 1026, 1032 (N.D. Ill. 2008) (former employee lacked standing to seek permanent injunctive relief enjoining defendants from engaging in certain employment practices.)

As in *Brown*, Richardson was a former employee by the time she filed this lawsuit, meaning that she is in no danger of future harm at the hands of State Farm. Richardson's only response to this argument is that she was "wrongfully terminated and wishes to be reinstated to her appropriate position at State Farm." [Dkt. No. 122 at 9.] But as discussed above, there are no facts in the SAC to support a claim of termination as to Richardson, wrongfully or otherwise. Nor does she explain how reinstatement could be possible when her relationship with State Farm was contractually based and that contract naturally expired. [*Id.* at 8–9.] Because she is no longer subject to the complained-of practices, nor is there an imminent and substantial risk of such injury in the future, the Court agrees that Richardson cannot obtain injunctive or declaratory relief. *See TransUnion*, 141 S.Ct. at 2210. To the extent that Richardson seeks injunctive and declaratory relief for her Title VII claims, the motion to dismiss is granted.

### *Title VII Disparate Impact Claim*

For its second argument, State Farm contends that the SAC does not allege sufficient facts in support of a Title VII disparate impact claim. [Dkt. No. 113 at 12–15.] A Title VII disparate impact claim is distinct from a Title VII disparate treatment claim. *Simpson v. Dart*, 23 F.4th 706, 712 (7th Cir. 2022) (criticizing the district court's failure to separating its analysis of plaintiff's disparate impact claims from its assessment of his disparate treatment claims). Disparate impact claims involve employment practices that "fall more harshly on one group than another and cannot be justified by business necessity," but they do not require proof of discriminatory motive. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) (citing *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 355 n.15 (1977)). To survive a motion to dismiss, a disparate impact claim "must identify a specific employment practice, allege its causation of the disparate impact, and give [d]efendants fair notice of the claim." *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 907 (N.D. Ill. 2011). The claim may not be pled in "wholly conclusory terms." *Adams v. City of Indianapolis*, 724 F. 3d 720, 733 (7th Cir. 2014) (complaint failed to state a plausible claim for disparate impact because it alleged only bare legal conclusions, including that an employer's policy had a "disproportionate" effect and an "impermissible impact").

In its prior Order denying State Farm's first motion to dismiss, the Court concluded that the Complaint identified "company-wide discriminatory policies" that discriminated against African Americans. [Dkt. No. 57 at 22–29.] It is true that the Court reached this conclusion in the context of the Individual Plaintiffs' § 1981 disparate treatment claims in the FAC. But the Court disagrees with State Farm's

5

characterization that this earlier decision "has no bearing" on whether Richardson has stated an actionable Title VII disparate impact claim. [Dkt. No. 128 at 7.] In the prior Order, the Court carefully analyzed a number of alleged policies and concluded they were sufficiently pled for purposes of disparate treatment.[1] The Court's conclusion in that regard still holds for disparate impact, so long as Plaintiffs have additionally pled sufficient facts connecting these policies to their disparate impact claim.

Plaintiffs have done so. Bearing in mind the guidance from *Simpson* and *Adams*, the Court disagrees that the SAC pleads the disparate impact claims in too conclusory a fashion. The SAC identifies a number of specific employment practices allegedly creating a disparate impact. These include, for instance, the policy of assigning Black TICAs and Agents to less wealthy regions than non-Black TICAs and Agents, and implementing a policy of "commission-based, cumulative-advantage compensation." [Dkt. 107 at ¶¶ 26, 30–34, 40–44.]. The descriptions of these policies are not merely conclusory: they identify a policy or practice, one related to territory assignment and the other to State Farm's compensation structure, and they allege that these policies result in experiences or outcomes not shared by other State Farm employees. Drawing all inferences in Richardson's favor, the SAC adequately alleges that specific State Farm policies have had a disparate impact on African-Americans. Nothing more is required at this stage.

*Statute of Limitations*

Finally, State Farm seeks dismissal of the Title VII claims on statute of limitations grounds, arguing that Richardson amended the complaint to add her Title VII claims one day beyond the expiration of the parties' tolling agreement. [Dkt No. 113 at 12.] In its prior Order, the Court declined to dismiss the two claims raised by the FAC on statute of limitations grounds, noting that dismissal based on an affirmative defense is permissible only if the complaint "admits all the ingredients of an impenetrable defense." [Dkt. No. 57 at 45 (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).] The Court declines to reach the opposite conclusion now in the context of the recently added Title VII claims. Viewing the allegations of the SAC in the light most favorable to Richardson, the Court cannot say that she has definitively pled herself out of court as it pertains to Title VII. As with the claims related to agency and territory assignments and discriminatory acts, dismissal is not appropriate based on State Farm's affirmative defense.

---

[1] For example, the Court concluded that an alleged discriminatory policy that "race matching" African American agents to less lucrative territories with higher African American and minority populations and refusing to reassign African American agents outside of their originally "race matched" territories, was sufficiently pled. [Dkt. No. 57 at 22–29.]

6

*Motion to Strike*

State Farm moves to strike Plaintiffs' class allegations on commonality, typicality, and predominance grounds. [Dkt. Nos. 116–17.] "At an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A); *see also* Fed. R. Civ. P. 23(d)(1)(D) (permitting the court to "issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"). "When a plaintiff's class allegations are facially and inherently deficient a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *Garvey v. Am. Bankers Ins. Co. of Fla.*, 2019 WL 2076288, at *1 (N.D. Ill. May 10, 2019) (cleaned up) (quoting *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014)); *see also Kasalo v. Harris & Harris*, Ltd., 656 F.3d 557, 563 (7th Cir. 2011) (holding that a court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination").

However, "[m]ost often it will not be 'practicable' for the court to [strike class allegations] at the pleading stage[.]" *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *see also Murdock-Alexander v. Tempsnow Emp't*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)) (noting that the Seventh Circuit has warned that motions to strike are generally "disfavored" as plaintiffs have the burden of meeting Rule 23 but defendants generally control the information plaintiffs need to meet that burden). If "the dispute concerning class certification is factual in nature and 'discovery is needed to determine whether a class should be certified,' a motion to strike the class allegations at the pleading stage is premature." *Buonomo*, 301 F.R.D. at 295 (cleaned up) (quoting *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010)).

At the outset, the Court rejects a few of State Farm's contentions. First, to the extent that State Farm argues that disparate treatment and disparate impact claims are generally inappropriate as class actions, courts have certified such classes. *See, e.g., Simpson v. Dart*, 23 F.4th 706, 712 (7th Cir. 2022) (observing that when "a plaintiff identifies a discrete employment policy that allegedly results in discrimination, Title VII disparate impact claims are well suited for classwide adjudication," as "the policy either disparately impacted the plaintiff class or it did not"); *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ.*, 797 F.3d 426, 440 (7th Cir. 2015) (reversing and remanding denial of certification of disparate impact and treatment theories); *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 878–80 (N.D. Ill. 2014) (denying motion to strike class allegations on disparate treatment, pattern or practice discrimination, and disparate impact theories in an employment class action).

Second, as already discussed, the Court has concluded that Individual Plaintiffs and Richardson sufficiently alleged a uniform set of policies sufficient to support their disparate treatment and impact claims. [Dkt. No. 57 at 22, 26–27, 29.]

7

Any argument that the Individual Plaintiffs and Richardson cannot meet Rule 23 commonality because they fail to allege such a policy falls flat. [Dkt. No. 117 at 2–3, 10–12.]

The remainder of State Farm's arguments urge the Court to conclude that Plaintiffs fail to allege a single uniform policy as intentionally discriminatory but rather allege that unidentified decision makers, at various times and in variant circumstances and locations, made decisions, thus failing to satisfy the commonality and typicality requirements.[2] [Dkt. No. 117 at 10–16.] It also contends that individualized questions of intent and causation preclude common answers to common questions, that a 23(b)(2) class is unavailable, and Plaintiffs' proposed class definition is too general. [*Id.* at 16–19.] Plaintiffs dispute all of this, emphasizing that the arguments are premature at this juncture. [Dkt. No. 123.]

As the parties' voluminous briefing on the motion to strike and the motion to phase discovery plainly illustrate [Dkt. Nos. 75–76, 85, 101–02, 117, 123, 129], the disputes raised by Plaintiffs' class allegations are intensely factual in nature. Striking the class allegations at this stage, without the benefit of class discovery, would be premature.[3] *Buonomo*, 301 F.R.D. at 295 (cleaned up). Rather, the more prudent course would be to allow class discovery to proceed and address the arguments raised at class certification. Put another way, this matter is not one of the "exceptional case[s]" in which the class allegations are facially and inherently deficient such that striking Plaintiffs' class allegations is appropriate. *See Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019) (quoting *DuRocher v. Nat'l Collegiate Athletic Ass'n*, 2015 WL 1505675, at *6 (S.D. Ind. Mar. 31, 2015)). Discovery will aid the parties and the Court's understanding of whether State Farm's arguments preclude the class allegations from moving forward. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011), *overruled on other grounds by*

---

[2] State Farm additionally contends that the Individual Plaintiffs are not typical of the class because only one, Brooke Cluse, still works for State Farm yet seeks to represent a class of current and former agents for equitable relief. [Dkt. No. 117 at 14–16.] As Plaintiffs point out, Cluse's status as a current employee of State Farm means that she can seek injunctive relief on behalf of "current and former" employees without a potential typicality concern. *See Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 666 (N.D. Ill. 2006) (citing *Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 472 (7th Cir. 2004)) (finding that class of current and former employees would have standing and meet Rule 23's typicality requirement so as to seek injunctive relief if at least one employee was still employed by defendant). State Farm's argument on this score is premature, though it may re-raise the issue if a named class representative can no longer serve this purpose.

[3] State Farm tacitly recognizes this in the motion to stage discovery. [Dkt. No. 76 at 11 n.2 (observing that "in the event State Farm's Motion to Strike is ultimately denied, [ ] State Farm's discovery schedule will still allow discovery on topics that are most likely to be potentially dispositive on class certification—namely whether the individual claims are sufficiently linked together by a common policy, practice or decision-maker such that their claims as well as those of other unnamed individuals can be adjudicated on a class wide basis").

8

*Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class.").

      State Farm is free to renew these arguments at class certification with the benefit of discovery. For now, the matter remains referred to Judge Harjani for supervision of discovery and settlement.

Enter:  20-cv-1121
Date:  September 6, 2023

_____
Lindsay C. Jenkins
United States District Judge

9