**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| ALTON WILLIAMS, BRANDON HERNDON, MARKUS TOLSON, JEFFREY FLOWERS, BROOKE CLUSE, VVONAKA RICHARDSON, VERA DIXON, and STAN CHAVIS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., STATE FARM LIFE INSURANCE CO., STATE FARM FIRE AND CASUALTY CO., STATE FARM GENERAL INSURANCE CO., and STATE FARM BANK, F.S.B.,<br><br>Defendants. | Case No. 20-cv-01121<br><br>Honorable Lindsay C. Jenkins<br><br>Hon. M. David Weisman |

**JOINT STATUS REPORT**

Pursuant to Magistrate Judge M. David Weisman's Order dated June 11, 2026 (Dkt. 400), the parties submit this Joint Status Report.

**I.      Documents Related to State Farm's New Agent Contract and Buyout Program**

1.      **Plaintiffs' Position:** Plaintiffs recently learned from class members and public reports that State Farm is forcing all of its Agents to enter into new Agent contracts, which include a new compensation scheme and sales targets for Agents.[1] State Farm confirmed to the Wall Street Journal that it is "updating how it supports and works with its independent contractor agents." These updates apparently include cutting benefits, changing commissions, ending a

---

[1] State Farm's AI plan for sales agents sparks uproar. 'A real slap in the face.', https://www.msn.com/en-us/money/markets/state-farm-s-ai-plan-for-sales-agents-sparks-uproar-a-real-slap-in-the-face/ar-AA25QXy7?ocid=BingNewsSerp (June 17, 2026).

deferred compensation program, encouraging Agents to consolidate into bigger offices, and offering "exit payments" to certain Agents who do not sign the new contract. *Id.* The article states that some Agents may lose up to 40% of their gross annual income. *Id.*

2. After learning of these important actions affecting class members and receiving calls from concerned putative class members, Plaintiffs asked State Farm to supplement its production and produce the new contracts, letters of intent, buyouts, and related documents it provided to State Farm Agents, including those that may include releases of claims, arbitration agreements, or class waivers.

3. These documents are plainly relevant to class certification and responsive to Plaintiffs' discovery requests.[2] This lawsuit challenges, among other things, State Farm's practices regarding the compensation of Agents and assignment of business opportunities, such as policies and second offices. The way in which State Farm plans to make "exit payments" to Agents and distribute the accounts of departing Agents who take the buyout is also plainly relevant to class issues.

4. State Farm has produced nearly identical documents already, including specimen Agent contracts, commission schedules, and other exhibits related to the Agent agreement. State Farm has also produced policies related to State Farm's assignment of policies of departing agents, opening second offices, and agent retirement. State Farm has a duty under Rule 26 to timely supplement its production to produce this important discovery.

---

[2]*See* Plaintiffs' First Set of Requests for Production of Documents Nos. 1-5 (requesting Agent Agreements and job descriptions); 6 (requesting documents sufficient to show compensation structures for Agents and TICAs); 20 (requesting policies related to the transfer and/or reassignment of policies to or from the Individual Plaintiffs and (ii) the process for the transfer and reassignment of existing customer policies to State Farm independent contractor Agents and TICAs).

5.     Plaintiffs require this information for class certification discovery and to properly counsel class members as to their options and rights and to make decisions in this case for the class. At this juncture, Plaintiffs do not know whether the new contract and related agreements Agents are being asked to consider and sign will seek to limit class members' discrimination claims or their ability to participate in this lawsuit as class members, including through forced releases of claims and arbitration agreements.

6.     State Farm's assertion that Plaintiffs' counsel was "unable to answer questions" about privileged conversations with their clients and State Farm's own actions with respect to its agents is backwards. State Farm plainly knows what it has presented and made available to its agents, and Plaintiffs are reasonable for relying on its public statements. While State Farm's counsel suggests that nothing will happen until 2027, Plaintiffs understand that State Farm has already presented documents to its agents and is asking them to make decisions now that may impact their rights in this lawsuit.

7.     State Farm should supplement its production for responsive documents related to this important issue immediately. Due to the magnitude and recency of State Farm's corporate decisions with respect to its Agents, this discovery should be readily available.

8.     **State Farm's Response:** Plaintiffs first made an informal email request for these materials less than two days ago--on the afternoon of June 24, 2026.  As State Farm indicated during the Parties' meet and confer on the morning of June 25, 2026 (which was not attended by Lead Counsel for Plaintiffs, who made the informal requests for materials), State Farm is considering Plaintiffs' request and will respond accordingly.

9.     State Farm further notes that Plaintiffs appear to have gathered the information recited herein solely from the above-referenced Wall Street Journal article, because when asked

during the meet and confer they were unable to answer questions about what information they believe has been presented to State Farm independent contractor agents, including Named Plaintiff Chavis, who is currently an agent, nor were they aware of whether Mr. Chavis or any putative class member has been asked to sign a new Agent's Agreement or if they have, in fact, done so.

10. Additionally, Plaintiffs' basis for seeking production of these materials, as articulated herein, is plainly not relevant or proportionate under Rule 26(b)(1). As an initial matter, State Farm notes that the referenced Wall Street Journal article (*see* State Farm's AI Plan for Sales Agents Sparks Uproar. 'A Real Slap in the Face.' - WSJ) states that the new Agent's Agreement is for those independent contractor agents who "stay past 2027." Plaintiffs have not established nor provided any evidence the referenced Agent's Agreement has been in effect during the relevant class period. Furthermore, the requested information is "not relevant to any party's claim or defense." Finally, to the extent that Plaintiffs believe they need access to this information in order to properly advise any client or putative class member[3] (*see* Para. 5, *supra*), current independent contractor agents are able to access the relevant information directly for review and consideration with their counsel.

## II.     Proposed Depositions of State Farm Apex Witnesses

11. On June 22, 2026, State Farm provided its response to Plaintiffs' apex witness lists.[4] Plaintiffs are currently reviewing State Farm's response, and the Parties intend to meet and confer on July 1, 2026, on the topic.

---

[3] It is black-letter law that before a class is certified, there is no attorney-client relationship between class counsel and members of the putative class. *See, e.g., Resnick v. Amer. Dental Ass'n*, 95 F.R.D. 372, 376 n.6 (N.D. Ill. 1982); *In re Broiler Chicken Antitrust Litig.*, 2019 WL 7285802, at *4 (N.D. Ill. Dec. 27, 2019).

[4] State Farm's June 20 deadline fell on a Saturday and per Rule 6 its response was due Monday, June 22.

### III. Depositions of State Farm's Rule 30(b)(6) Witnesses

12. Consistent with the Court's rulings on Rule 30(b)(6) topics at the May 6, 2026 status hearing, State Farm has been working to schedule the depositions of its Rule 30(b)(6) witnesses. Per the Court's June 11, 2026 Order, Plaintiffs provided a prioritized list of 30(b)(6) witnesses on June 22, 2026. Plaintiffs understand Defendants will respond to their letter shortly.

### IV. State Farm's Rule 37 Letters

13. On May 21, 2026, State Farm wrote Plaintiffs about their Supplemental Answers and Objections to Defendants' Interrogatories and productions by plaintiff and putative class representative Vera Dixon. While disagreeing and reserving their rights, Plaintiffs responded via email on June 22 and agreed to supplement certain responses.

14. On June 9, 2026, State Farm wrote Plaintiffs another letter about Plaintiffs' document production. Plaintiffs responded to State Farm's letter via email on June 24, 2026 and will produce additional discovery.

15. State Farm is currently evaluating the sufficiency of Plaintiffs' response to its two Rule 37.2 letters.

### V. Plaintiffs' Depositions

16. State Farm has noticed but not yet completed the depositions of the three remaining Named Plaintiffs—Vvonaka Richardson, Alton Williams, and Brooke Cluse.

17. Plaintiff Alton Williams' deposition has been scheduled in July 2026. Plaintiffs have offered Plaintiff Brooke Cluse for deposition during the first week in August in Chicago and believe a date will be agreed upon soon.

18. On June 17, Plaintiffs served 30 requests for production related to Ms. Cluse. State Farm is reviewing these RFPs and will respond and object accordingly. State Farm asks

the Court to order that Ms. Cluse's deposition occur during the first week of August regardless of any objections Plaintiffs may levy against State Farm's responses and objections to these RFPs.

19.     Plaintiff Vvonaka Richardson has suffered personal issues that have delayed her availability for deposition, including the death of an immediate family member. The parties are discussing a mutually agreeable date in early August and believe they will agree on it soon.

## VI.     Redactions in State Farm Documents

20.     As part of its re-review of ESI responsive to Plaintiffs' Third Set of Requests for Production of Documents, State Farm redacted agent names from numerous documents. These redactions prevent plaintiffs from properly understanding and using the document, and cross-referencing them to other discovery and putative class members. In April, Plaintiffs requested that State Farm produce the documents unredacted, as the information was not privileged, and the parties had entered into a confidentiality agreement. State Farm refused.

21.     During the parties' June 8 meet and confer, State Farm made a proposal regarding providing some information as to the redacted agents, and during the June 25 meet and confer, Plaintiffs verbally provided a counterproposal. State Farm agreed to review a written counterproposal and will respond in short order once it receives the written counterproposal.

## VII.     ESI Discovery

### A.     Plaintiffs' Position Regarding ESI

#### 1.     Third Set of Requests for Production

22.     As the June 10 Joint Status Report stated, there is a distinct issue with State Farm's ESI response to Plaintiffs' Third Set of Requests for Production that were subject to the Court-ordered re-review. After Plaintiffs objected that the ESI search terms and production the Court allowed State Farm to use were too narrow, Plaintiffs presented the Court with ample

documents (produced as part of a sample set of documents State Farm deemed non-responsive) that were plainly relevant and responsive. These documents included high-level discussions of the challenged practices. Based on these documents, the Court ordered State Farm to re-review the ESI it withheld "for documents that entail SVP-and-above level discussion of challenged practices, discuss State Farm's diversity efforts, this lawsuit, and SVP approval or insight into decisions related to agents opening multiple offices or receiving policy assignments, and produce relevant documents." (Dkt. 354).

23. Approximately four months later, on March 31, 2026, State Farm completed the re-review, but produced few "documents that entail SVP--and--above level discussion of challenged practices" that the Court ordered produced. (Dkt. 354). Plaintiffs believe that additional documents related to high-level discussions of the challenged practices likely exist.

24. Plaintiffs have conferred with Defendant about a targeted re-review of and production of related documents on June 8, but State Farm has refused additional re-review. On June 25, Plaintiffs conferred with State Farm again and proposed that, for a small number of documents produced, State Farm would do a "go-get request" for documents related to the produced document(s). Plaintiffs will provide this list of documents on June 29. Plaintiffs understand State Farm will review the list.

25. On April 24, Plaintiffs requested production of certain documents that were embedded or attached to produced ESI emails. Plaintiffs understand State Farm will be responding in writing to this request and intend to meet and confer with them on this issue.

   2. Fourth Set of Requests for Production

26. Plaintiffs carefully crafted their Fourth Set of Requests for Production of Documents to garner key discovery to support their class certification motion and fill the gaps

left by State Farm's production. Plaintiffs focused on high-level corporate reporting and discussions with senior executives about the challenged practices. State Farm refused to produce documents responsive to more than 30 of the 39 requests and eschewed searching for responsive ESI.

27.     Plaintiffs met and conferred in good faith and provided a revised ESI search term list, which State Farm rejected. In an attempt to reach compromise and further narrow the issue, Plaintiffs provided a dramatically narrowed ESI proposal, primarily targeted at just four State Farm executives as part of the Parties' April 22, 2026 joint status report. The hit report revealed substantially fewer "hits," or documents yielded by the narrowed search terms. Thereafter, Plaintiffs asked for detail about the results of each search term to further revise the terms to delete outliers with the hope the adjusted terms would result in an agreement to proceed with this important ESI.

28.     Plaintiffs believed their discussions on ESI search terms and custodians were productive and progressing toward an amicable resolution. However, based on the Court's May 19 ruling, State Farm now refuses to further discuss or produce additional relevant ESI for RFPs Nos. 4, 6, 8, 9, 11, and 16. Plaintiffs attach Exhibit 1[5] setting forth the disputed requests that were in the midst of discussions. Plaintiffs ask the Court to order a detailed hit report for RFP Nos. 4, 6, 8, 9, 11, and 16 and further meet and confer regarding these requests. Plaintiffs respectfully submit that the hit report reveals that these requests are not overly broad.

B. Defendants' position regarding ESI

---

[5] In Exhibit 1, Plaintiffs discuss hit counts, which they understand are limited to four executives (Tipsord, Farney, Cook, and Harbert).

8

29. During the June 8 meet and confer, Plaintiffs disclosed their intention to re-litigate ESI issues in the June 10 joint status report and in the June 12 status hearing. During the June 25 meet and confer, and despite ample opportunity to review and consider State Farm's position on these issues as articulated in the June 10, 2026 joint status report, Plaintiffs did not meet and confer about these issues, but rather stated they again intended to re-litigate these issues in this status report and during the June 29 status hearing.

30. During the May 19 hearing, the Court denied Plaintiffs any relief from all of the RFPs for which they seek ESI discovery, except for RFP Nos. 1 and 22 in the Fourth Set of Class RFPs. *See* May 19, 2026 Order (Dkt. 391) at 3 ("The Court considers discussion of the disputes regarding written responses to the RFPs discussed today (and in previous status hearings) to be fully exhausted and resolved. Parties are meeting and conferring as to limited redaction-related issues."). The Court arrived at this conclusive Order after holding a 2 hour and 6-minute status hearing in which it ruled upon 10 categories of documents sought by Plaintiffs (and the individual Rule 34 requests seeking those materials) contained in a 23-page joint status report (Dkt. 379) submitted in advance of the hearing. While Plaintiffs have filed a Rule 72(a) objection to this Order (*see* Dkt. 396), they seemingly also are asking the Court to undo the Order and permit further ESI discovery on RFPs that the Court has deemed "fully exhausted and resolved." Dkt. 391 at 3.

31. With respect to Plaintiffs' search terms, State Farm did not "reject" them. As required by the ESI Protocol (Dkt. 170), State Farm provided hit counts for each set of Plaintiffs' proposed terms. And during the June 8 and 25 meet and confers, State Farm agreed to review the hits for certain of the terms proposed by Plaintiffs for RFP Nos. 1 and 22.

32. During the June 8 and 25 meet and confers, Plaintiffs stated that they believe State Farm's ESI production responsive to Plaintiffs' Third Set of RFPs is incomplete. Plaintiffs said

they believe other "high-level" communications have not been produced and asked State Farm to re-review the gathered ESI for "high-level" communications regarding challenged decisions. State Farm responded during the June 8 discussion, however, that it has followed the agreed protocol, using the custodians and search terms agreed to by the Parties, and it followed the Court's guidance when conducting the re-review of non-responsive documents.

33. During the June 25 meet and confer, Plaintiffs said that they would like State Farm to search for documents related to certain emails in State Farm's non-responsive ESI production. Plaintiffs proposed sending a list of non-responsive produced ESI to State Farm and asking State Farm to find and review documents related to that ESI. State Farm responded that such discovery is not relevant and proportionate to the needs of the case at this time. Nonetheless, State Farm agreed to review and evaluate a list of the non-responsive ESI provided by Plaintiffs in consideration of Plaintiffs' request. According to Plaintiffs' representation, State Farm expects to receive that list on June 29.

34. Plaintiffs misstate and omit relevant information regarding their April 24 email. In that email, Plaintiffs claim State Farm did not produce documents that were attachments in lower chain emails. In an April 27 email, State Farm said it would review the list of documents for which Plaintiffs claim attachments were missing. On **June 5**, Plaintiffs asked to meet and confer on this issue, and, during the June 8 meet and confer, State Farm explained that State Farm has not withheld any documents, that the referenced materials were not attachments to the top email in the chain, and the April 24 email and follow up two months later constitute improper new requests for State Farm to search, review, and produce additional emails.

35. State Farm also explained that the documents identified by Plaintiffs are not relevant or proportionate to the claims or defenses of this case as they consist of factual findings

relating to decisions affecting independent contractor agents who are not Named Plaintiffs (e.g., agent fact sheets, investigative reports, and agent business plans). Plaintiffs claim that such information is relevant "comparator discovery," despite the fact that this constitutes a merits issue, not a class certification issue. Indeed, by insisting that such individually focused documents are relevant, Plaintiffs admit that their theory of liability requires individualized determinations not suited for Rule 23 adjudication. Nonetheless, State Farm is preparing a written response to Plaintiffs' request.

Dated: June 26, 2026

Respectfully submitted,

By: */s/ Justin L. Leinenweber*
Linda D. Friedman
Suzanne E. Bish
George S. Robot
STOWELL & FRIEDMAN, LTD.
303 W. Madison St., Suite 2600
Chicago, IL 60606
(312) 431-0888
lfriedman@sfltd.com
sbish@sfltd.com
grobot@sfltd.com

Benjamin L. Crump (pro hac vice)
Nabeha Shaer (pro hac vice)
Sue-Ann Nicole Robinson (pro hac vice)
BEN CRUMP LAW, PLLC
122 S. Calhoun St.
Tallahassee, FL 32301
(800) 713-1222
court@bencrump.com
nabeha@bencrump.com
sueann@bencrump.com

Justin L. Leinenweber
JUSTIN L. LEINENWEBER, PC
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
(312) 857-3405
justin@ilesq.com

*Attorneys for Plaintiffs and Putative Class*

By: */s/ Amy C. Andrews*
Patricia Brown Holmes
Joseph A. Cancila, Jr.
Amy C. Andrews
Joseph Anthony Steadman
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn St., Suite 2200
Chicago, IL 60603
(312) 471-8700
pholmes@rshc-law.com
jcancila@rshc-law.com
aandrews@rshc-law.com
jsteadman@rshc-law.com

Michael A. Warner, Jr.
FRANCZEK P.C.
300 S. Wacker Drive, Suite 3400
Chicago, IL 60606
(312) 786-6118
maw@franczek.com

*Attorneys for Defendants*